# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | |
|---|---|
| ELAINE BONIN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FRONTLINE ASSET STRATEGIES, LLC and BUREAUS INVESTMENT GROUP PORTFOLIO NUMBER 15, LLC, <br><br> Defendants. | Case No.: 17-cv-90 <br><br> **CLASS ACTION COMPLAINT** <br><br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331 and 1337. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Elaine Bonin is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5. Defendant Frontline Asset Strategies, LLC ("Frontline") is a debt collection agency with its principal offices located at 2700 Snelling Avenue North, Roseville, MN 55113.

6.  Frontline is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.  Frontline is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes. Frontline is a debt collector as defined in 15 U.S.C. § 1692a.

8.  Bureaus Investment Group Portfolio Number 15, LLC ("BIG 15") is engaged in the business of a collection agency, in that it purchases and receives assignment of consumer debts that are in default at the time Frontline acquires them.

9.  The FDCPA treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. 15 U.S.C. § 1692a(6)(F)(iii); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003), *citing Bailey v. Sec. Nat'l Serving Corp.*, 154 F.3d 384, 387 (7th Cir. 1998); *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 958 (7th Cir. 1998); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403-04 (3d Cir. 2000); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-07 (6th Cir. 1996); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985).

10. BIG 15 uses third party debt collectors, including Frontline, to collect allegedly defaulted debts that have been assigned.

11. A company meeting the definition of a "debt collector" under the FDCPA (here, BIG 15) is vicariously liable for the actions of a second company collecting debts on its behalf. *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325-26 (7th Cir. 2016) (assignees who are "debt collectors" are responsible for the actions of those collecting on their behalf); *citing Pollice*, 225 F.3d at 404-05.

## FACTS

12. Prior to December 5, 2016, Plaintiff's account with Capital One Bank (USA), N.A. ("Capital One") went into default.

13. Prior to December 5, 2016, and after Plaintiff's account with Capital One was in default, Capital One sold or otherwise assigned the ownership rights to Plaintiff's account to BIG 15.

14. On or about December 5, 2016, Frontline mailed a debt collection letter to Plaintiff regarding an alleged debt, allegedly owed to BIG 15 and originally owed to "Capital One Bank (USA), N.A." A copy of this letter is attached to this complaint as Exhibit A.

15. Upon information and belief, the alleged debt that Frontline was attempting to collect was a personal credit card account, used only for personal, family or household purposes.

16. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

17. Upon information and belief, Exhibit A is a form debt collection letter used by Frontline to attempt to collect alleged debts.

18. Exhibit A contains the following settlement offer:

> Your current creditor has agreed to resolve your above-mentioned account for $885.85.
>
> We request payment by 01/04/2017. Upon payment of this offer and clearance of funds, we will notify your current creditor that your account has been satisfied and that you no longer owe on this debt.

19. The letter purports to offer a settlement of the debt for about 74% of the total alleged debt.

20. The settlement offer in Exhibit A falsely states or implies that the settlement offer is valid only if the payment is made "by 01/04/2017." (Exhibit A). The unsophisticated consumer interprets such dates as deadlines.

3

21. Upon information and belief, Frontline had authority from BIG 15 to settle consumers' accounts for 74% of the amount owed, or less, at any time.

22. Statements such as a settlement offer is a "limited time offer," or that the offer expires on a specific date, or that payments must be received by that date, are false and misleading because the same offer is, upon information and belief, available at any time.

23. Such false statements are material false statements, as they impart in the unsophisticated consumer, a false belief that he or she must hurry to take advantage of a limited-time opportunity, when in reality, there is no such time limit.

24. The Seventh Circuit has established "safe harbor" language regarding settlement offers in collection letters:

> As in previous cases in which we have created safe-harbor language for use in cases under the Fair Debt Collection Practices Act, we think the present concern can be adequately addressed yet the unsophisticated consumer still be protected against receiving a false impression of his options by the debt collector's including with the offer the following language: "We are not obligated to renew this offer." The word "obligated" is strong and even the unsophisticated consumer will realize that there is a renewal possibility but that it is not assured.

*Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 775-76 (7th Cir. 2007).

25. Frontline did not use the safe harbor language in Exhibit A.

26. Upon information and belief, the deadline in Exhibit A to respond to the settlement offer is a sham. There is no actual deadline. The sole purpose of the purported deadline is to impart in the consumer a false sense of urgency.

27. Plaintiff was confused by Exhibit A.

28. Plaintiff had to spend time and money investigating Exhibit A and the consequences of any potential responses to Exhibit A.

29. Plaintiff had to take time to obtain and meet with counsel, including travel to counsel's office by car and its related expenses (including but not limited to the cost of gasoline and mileage), to advise Plaintiff on the consequences of Exhibit A.

30. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

31. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

32. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

33. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

34. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

## COUNT I – FDCPA

35. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

36. Exhibit A includes false statements to the effect that the settlement offer is for a limited time only.

37. Upon information and belief, the creditor and/or Frontline would settle Plaintiff's and class members' debts at the offered discount and likely for less at any time, regardless of the supposed deadline.

38. Defendants violated 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

## CLASS ALLEGATIONS

39. Plaintiff brings this action on behalf of a Class, consisting of (a) all natural persons in the State of Wisconsin (b) who were sent an initial collection letter in the form represented by Exhibit A to the complain in this action, (c) seeking to collect a debt for personal, family or household purposes, (d) between January 19, 2016, and January 19, 2017, inclusive, (e) that was not returned by the postal service.

40. The Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of the Class.

41. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with 15 U.S.C. §§ 1692e, 1692e(10) and 1692f.

42. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

43. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

44. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## **JURY DEMAND**

45. Plaintiff hereby demands a trial by jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: January 19, 2017

7

Case 2:17-cv-00090-JPS   Filed 01/19/17   Page 7 of 8   Document 1

**ADEMI & O'REILLY, LLP**

By: s/ John D. Blythin
Shpetim Ademi (SBN 1026973)
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Denise L. Morris (SBN 1097911)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
sademi@ademilaw.com
jblythin@ademilaw.com
meldridge@ademilaw.com
dmorris@ademilaw.com